## HURLBURT v. WESTBROOK.

[71 South. 902.]

1. VENUE. *Two court districts.   Statute.   Replevin suit.*

   Under Acts 1902, chapter 93, entitled, "An act to divide Coahoma
   county into two circut court and chancery court districts and
   for other purposes," the county to a certain extent is made for
   the purpose of venue of actions practically two separate and
   distinct counties, and if a defendant is sued in the wrong dis-
   trict he has the right to a change of venue to the proper district,
   as if he were a resident of another county and desired a change
   of venue to the county of his residence.

2. VENUE. *Two court district.   County.   Replevin suit.   Statutes.*

   The second proviso of section 13, Acts 1902, chapter 93, providing
   that no suit shall be dismissed because defendant may be sued

in the wrong district, but the cause shall be transferred on motion to the proper district, where defendant, a resident freeholder of the second district of the county, was sued in replevin. in .the first district, the sheriff executing the writ by taking the property located in the second district, was not entitled to dismissal for lack of jurisdiction, having the option to have the cause transferred to the second district, a citizen of the county, being entitled to have a case tried in the district of his residency unless he or the property be found in the other district. This construction of the statute harmonizes with the code chapter on replevin, fixing the venue of such actions in the county wherein the property sought to be replevied or the defendant, may be found.

APPEAL from the circuit court of Coahoma county. HON. W. A. ALCORN, Jr., Judge.

Replevin by L. G. Hurlburt aginst John Westbrook. From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*R. H. Kirby,* for appellant.

*Maynard & Fitzgerald,* for appellee.

COOK, P. J. delivered the opinion of the court.

This suit originated in the circuit court of Coahoma county, and is an action of replevin for the recovery of certain logs. Coahoma county is a two court district county, made so by an act of the legislature, entitled "An act to divide Coahoma county into two circuit court and chancery court districts, and for other purposes." approved February 19, 1892, p. 362 *et seq.*

The appellant here was plaintiff below. He filed his declaration and affidavit for the writ of replevin with the clerk of the circuit court at his office in the courthouse of the first circuit court district of the county, and the writ was delivered to sheriff, who executed same by taking into his possession the logs which were located in and found in the second circuit court district of the county. Appellee, defendant below, joined issue on the declaration in common form. Appellee also filed a motion to dismiss the suit for want of jurisdiction, and to impanel a jury

of inquiry to assess his damages, because: (a) The logs were not found in the first district of the county; and (b) defendant was a resident freeholder of the second district of the county.   This motion was sustained and a jury impaneled, who returned a verdict for defendant and assessed his damages at four hundred and twenty-one dollars. From this judgment plaintiff prosecutes this appeal.

The Code chapter on Replevin fixes the venue of such actions in the county wherein the property sought to be replevied or the defendant may be found.   In this instance, the property and the defendant were found in the second district of the county, while the suit was filed in the first district.   If we lay to one side the act of the legislature dividing the county into two court districts, we are bound to say that the. Code chapter on replevin was strictly followed in the filing of the suit and the execution of the writ.   The suit was begun and the papers filed at Friars Point, the county site of Coahoma county, before the passage of the law dividing the county into districts.   The logs were found in Coahoma county, and so was the defendant.

But it is insisted that the statute dividing the county into two court districts had the effect of making the county, for the purposes of the venue of actions, practially two separate and distinct counties.   This contention, to a certain extent, is sound.   If the defendant is sued in the wrong district he has the right to a change of venue to the proper district just as if he was a resident of another county and desired a change of venue to the county of his residence, but it is nevertheless true that he is a resident of Coahoma county and of no other county, and his rights are measured by the statute dividing the county into two court districts.

Taking a comprehensive view of the statute dividing Coahoma county into two court districts for the administrative purposes, and for the convenience of the inhabitants of the county, there does not seem to be any serious difficulty in interpreting the purpose and will of the legis-

lative department of the state. The statute in question differs in some of its details from similar laws, and the infirmities and lack of precision of similar statutes were helpful to the draughtsman of the bill.

Before discussing the section of the law specifically referring to and controlling the question presented in this appeal, we will notice briefly some of the other provisions of the law.

Section 3 provides:

"The sheriff of Coahoma county shall be the proper officer to execute all process required by law to be executed by the sheriff, and to return the same to such district of said county as the same may belong."

May we not say here, that if any error was made in this case the same was made by the sheriff? In other words, was it not made the duty of the sheriff to return this process to the circuit clerk at his office in the second district, when he found the property and the defendant in that district? This view of the law is accentuated by section 8 of the act.

This statute also requires the board of supervisors to meet alternately in each district of the county, and section 11 of the act (somewhat different from similar laws) gives to the board sitting in either district full jurisdiction to do anything such boards are empowered to do just as if the county had not been cut into separate districts.

Section 13, the controlling section, reads thus:

"All civil actions shall be commenced in each of said districts against defendants as if each district was a county, and a change of venue from either of such districts to the other and from either district to any county of the state, and from any county to either of said districts shall be had in the same manner and in the same character of suits as shall be allowed by law from one county to another, and the jurisdiction of the said courts of said districts shall be the same as if each district was a separate county: Provided, however, that any suit or action which may be brought in either of said districts may be commenced by by filing the declaration complaint, or other pleading,

with the clerk of either of said courts at either Friars Point or Clarksdale; and the said clerk shall issue process thereon, returnable to the court of the proper district, and shall deposit the papers in the case in the district where the action or suit thereon shall be brought; and, provided further, that no suit or action shall be dismissed because of the fact that the defendant may be sued in the wrong district, but said case or cause shall, on motion, be transferred for disposition to the proper district, and all motions for a change of venue provided for by this section in suits hereafter filed shall be made on or before the third day of the term of the court to which such suit is returnable."

Section 14 is here set out to complete the legislative scheme, viz.:

"All civil suits, proceedings or matters now pending in the circuit and chancery courts of said county, where the defendant, if such suits or proceedings were hereafter brought or instituted, would be entitled to be sued or have such proceedings instituted in the second district, shall, on motion of the defendant, be transferred forthwith to the said second district of said county: Provided, a motion to that effect be made on or before the third day of the next succeeding term of the court in which the suit, proceeding or matter, shall be pending, holden after the passage of this act, and no orders, motions or proceedings shall be had in any of said suits until after the expiration of the time hereby fixed and allowed for the making of said motion. In matters or proceedings *ex parte,* or otherwise, where there shall be no defendant, the same may, at any time, be transferred to the second district, on the motion of the party *interested* in person, or by his attorney of record."

The second proviso of section 13, *supra,* seems to relieve the question presented of any difficulty. Appellee invokes a strict construction of the language of this proviso, upon the fallacious assumption that it is in conflict with the general law on the subject. There is no conflict,

in our opinion, for the visible reason that the statute here involved is designed to meet a situation in Coahoma county, while the general law refers to counties generally —counties wherein there are no separation of parts. The citizen is entitled in both cases to be sued in the county of his residence, or in the county where the property is found. For further convenience of the people of Coahoma county, a citizen is entitled to have his case tried in the court district of his residence, unless he or the property be found in the other district.

This, we think, is the law of the case, and this, we believe, harmonized the general statute and the special law. From our standpoint there is no inharmony. If the general law is in force, in this case, the case was certainly triable at Friars Point, and the defendant was not entitled to a change of venue. But, we think, the statute enlarges the rights of the defendant by giving him a right to change the venue to the district of his residence in any event. Stated differently and conversely, the statute referring to venue of actions very wisely ignores the place in the county where actions are filed, and recognizing that mistakes would be made in the venue, and to relieve the courts of the necessity of threshing out questions of venue, and to convenience litigants, defendants may have the case sent to the district of his residence, but he cannot in such cases have the suit dismissed. To repeat, we believe the defendant was not entitled to have the cause dismissed. He had the option to have the cause transferred to the second district, and that was the limit of his rights.

*Turner* v. *Lilly,* 56 Miss. 576, and *Ellison* v. *Lewis,* 57 Miss. 588, are cited by appellee to support the action of the trial court. These cases were brought in the courts of a justice of the peace, and the court said in one of the cases that a replevin suit was, under our statutes, an action *in rem* and was triable wherever the property was found; the other case characterizes the action as *sui juris,* meaning thereby, no doubt, that the venue of such actions was in any justice district where the property or the de-

fendant could be found because of the statute fixing the venue of actions in replevin. These decisions, we believe, are not decisive or helpful in the present case. If the rule there announced was controlling here, appellee would be lost, because he was sued in the county where both he and the property were found. The statutes dividing the county, however, gives the right to change of venue, unless the property or the defendant be found in the district wherein the action was begun. By the plain language of the statute, in case the action of replevin is filed in the wrong district, this will not work as abatement of the suit, but will give the defendant the privilege of applying for a change of venue to the district of his residence. The language of the statute is broad, and when we consider the situation, the legislative intent is not doubtful.

*Reversed and remanded.*